UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALTON BROWN,<br><br>        Plaintiff,<br><br>v.<br><br>RP ON-SITE, LLC,<br><br>        Defendant. | Case No.: 1:23-cv-03539<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Alton Brown ("Mr. Brown" or "Plaintiff") by and through his counsel brings the following Complaint against RP On-Site, LLC ("RP" or "Defendant") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681, *et seq.*, arising out of tenant screening reports that RP published to Plaintiff's potential landlord, which **falsely** portrayed Plaintiff had been convicted in 2020 instead of 1997.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* ("FCRA").

2. RP is a consumer reporting agency ("CRA") that compiles and maintains files on consumers on a nationwide basis. Defendant sells consumer reports, also known as tenant screening reports, generated from their database and furnish these tenant screening reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3. Defendant assembled, evaluated and published an inaccurate tenant screening reports to Plaintiff's prospective landlord, which included recent convictions, when Plaintiff was convicted back in 1997.

4. Defendant's reports contain patently inaccurate information because records with the Court clearly show that Plaintiff was not convicted in 2020 but almost 23 years prior.

5. Plaintiff's prospective landlord denied Plaintiff's housing application after receiving the tenant report from Defendant, in which Defendant published the patently inaccurate criminal records.

6. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available underlying public court records pertaining to the criminal records prior to publishing the information to Plaintiff's prospective landlord.

7. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

8. Defendant committed these violations pursuant to their standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

9. Defendant's inaccurate reports cost Plaintiff the ability to rent the property that was suitable for Plaintiff, his wife and their baby, was conveniently located, and was affordable, causing Plaintiff monetary damages and physical injury as a result of emotional

distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

10. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; additional and unexpected expenses to secure alternate accommodations; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

11. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. §1681e(b) *et seq*.

## PARTIES

12. Plaintiff Alton Brown ("Mr. Brown" or "Plaintiff") is a natural person residing in Brooklyn, NY, and is a "consumer" as that term is defined in §1681a(c).

13. Defendant RP On-Site, LLC ("RP" or "Defendant") is a Delaware LLC doing business throughout the United States, including in this District.

14. RP can be served through its registered agent The Corporation Trust Company, located at Corporation Trust Center, 1209 Orange St, Wilmington, DE 19801.

15. Among other things, Defendant sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant.

These reports are provided in connection with a business transaction initiated by the consumer.

16. Defendant is a consumer reporting agency as defined in 15 U.S.C. §1681a(f) because for monetary fees, they regularly engage in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and use interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer"

and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. §1681.

21. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. §1681e(b).

22. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

### THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

23. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates tenant screening reports like the one Defendant prepared in Plaintiff's name.

24. The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit.

25. In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of tenant screening reports, like Defendant, are "consumer reporting agencies." §§1681a(d) and (f).

26. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." §1681.

27. Under §1681e(b), consumer reporting agencies are required "to follow

reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28.   Defendant disregarded its duties under the FCRA with respect to Plaintiff's tenant screening report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29.   Over the past 15 years, there has been increased collection and aggregation of consumer data, including eviction and civil judgment records. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

30.   Tenant Screening Reports are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating tenant screening reports.

31.   Tenant Screening companies, like Defendant, collect millions of records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

32.   Given that Defendant is in the business of selling tenant screening reports, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

33.   Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert

proper quality control over the reports prior to their being provided to Defendant's customers.

34. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

35. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

36. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting information belonging to another consumer.

37. As a provider of tenant screening reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Mr. Brown Applies for Rental

38. In or around November 2022, Mr. Brown began searching for a new rental in the Bronx, for himself, his wife and their new baby.

39. Mr. Brown's search for a new apartment was urgent.

40. Mr. Brown's search was limited not only because of the location of their future home but also because Mr. Brown's family needed more space than their then current apartment, as well as being within his budget.

41. Mr. Brown was specifically searching for an apartment that was in a safe neighborhood and close to his job.

42. In or around December 2022, Mr. Brown toured an apartment that met his criteria and budget.

43. Almost immediately, on or about December 6, 2022, began the application process with Eastchester Heights Property Owner LLC (the "Property Manager").

44. As part of his application, Mr. Brown was required to consent to a tenant screening report.

**RP Publishes an Inaccurate Tenant Screening Report to**

**the Property Manager**

45. The Property Manager contracted with RP to conduct tenant screening reports on prospective tenants to determine whether the prospective tenant is eligible to rent an apartment.

46. On or about March 2, 2023, RP sold a tenant screening report about Mr. Brown to the Property Manager, wherein RP published information including a compilation of Mr. Brown's credit history, criminal history, and civil records history.

47. The tenant screening report is a consumer report regulated by the FCRA.

48. Within that tenant screening report, RP published inaccurate information about Mr. Brown.

49. Specifically, RP reported inaccurately that Mr. Brown had been convicted of "Murder 2nd" and "Robbery 1st", on May 19, 2020.

50. The inaccurate information showed on the tenant screening report as follows:

| Criminal History | | | | | | |
|---|---|---|---|---|---|---|
| **Requested For** Alton Brown | | **Location Searched** Multistate Search | | **Period Searched** 3/2/2016 - 3/2/2023 | **Requested** 3/2/2023 | **Returned** 3/2/2023 |
| **Case Number** | **Record Source** New York Corrections | **Record Vendor** Genuine Data Services, LLC | **Name on Record** BROWN, ALTON | **Birth Date** 3/**/1978 | **Charges** 5/19/2020 - **Felony** (Guilty) MURDER 2ND 5/19/2020 - **Felony** (Guilty) ROBBERY 1ST | |

51. The information is inaccurate because Mr. Brown was not convicted in 2020 but almost 23 years prior in 1997.

52. The information is patently inaccurate because the minimum sentence for murder in the second degree is 15 years.

53. The above-referenced information should not have been included in any tenant screening report about Mr. Brown.

54. Specifically, it is indisputable that prior to furnishing the reports about Mr. Brown to the Property Manager, RP failed to consult on-line records with New York Department of Corrections and Community Supervision, which indicate that Mr. Brown was convicted back in 1997 and released on parole May 19, 2020.

55. RP's reporting of inaccurate information on the tenant screening report is highly stigmatizing to Mr. Brown because Mr. Brown has already purged his prison sentence and RP's inaccurate reporting unlawfully extends the punishment imposed on Mr. Brown.

56. After repaying his debt to society and, even while still incarcerated, Mr. Brown has worked hard to reinsert himself in and become a valuable member of society.

57. Mr. Brown was barely 17 years old when he was arrested and charged with felony murder. Mr. Brown was physically present during the commission of an armed

robbery during which the victim was murdered. However, Mr. Brown himself did not harm anyone or carry a weapon during the incident. Still, he was prosecuted to the maximum extension possible.

58.  Just shortly after turning 19 years old, Mr. Brown sentenced to 25 years to life.

59.  Mr. Brown served 24 years and 6 months years in prison.

60.  While in prison, Mr. Brown did not get into any trouble and was released on parole in May 2020.

61.  Immediately, Mr. Brown started looking for a job and started working as a case manager in July 2020 at one of the COVID hotels/shelters that were set up in NYC.

62.  Mr. Brown later became a Trauma Response Practitioner, and has worked as such ever since.

63.  Mr. Brown was able to rent an apartment in February 2021.

64.  Thereafter, Mr. Brown married and had a baby with his wife.

65.  Mr. Brown's consistent and sustained efforts have resulted that in May 2023, Mr. Brown will have completed his parole and will be eligible for a Certificate of Relief, having already began the necessary paperwork.

66.  RP's unreasonable or non-existent procedures allowed RP to publish a report about Mr. Brown wherein RP reported stigmatizing information in violation of the FCRA.

67.  Had RP actually consulted or obtained the widely available underlying public court records, RP would have seen Mr. Brown was actually released, instead of convicted, on May 19, 2020.

68. Upon information and belief, RP has no policies and procedures to avoid reporting convictions which are too recent for the minimum prison terms that the conviction carries.

69. The sole reason the inaccurate criminal records were reported was that RP failed to follow reasonable procedures to assure the maximum possible accuracy of the information they published within the tenant screening reports they sold about Mr. Brown to his prospective landlord.

70. Had RP followed reasonable procedures, they would have discovered that the inaccurate, stigmatizing criminal charges were almost 23 years older than reported.

71. In preparing and selling consumer reports about Mr. Brown, wherein RP published to his prospective landlord inaccurate information about Mr. Brown, RP failed to follow reasonable procedures to assure that the report were as accurate as maximally possible, in violation of §1681e(b).

## Mr. Brown's Application is Denied

72. On or about March 2, 2023, Mr. Brown was informed by the Property Manager, that they were denying his rental application due to RP's tenant screening report.

73. Thereafter, Mr. Brown obtained a copy of a tenant screening report and was shocked and humiliated upon reviewing and realizing that his conviction was inaccurately published in the tenant screening report that RP sold about Mr. Brown to the Property Manager.

74. Mr. Brown was very panicked, confused, embarrassed, annoyed, persecuted and concerned about the impact of the recent date of his conviction inaccurately reporting

on his tenant screening reports now and in the future.

75. Specifically, RP was reporting patently false information, and sold that report to Mr. Brown's prospective landlord.

76. The correct information has always been public record and was widely available on-line to RP, prior to publishing Mr. Brown's tenant screening report to the Property Manager, but RP simply failed to perform even a basic internet search.

## Mr. Brown Disputed the Inaccurate Information in RP's Tenant Screening Reports

77. On or about March 4, 2023, desperate to secure housing with the Property Manager and riddled with worry over the far-reaching impacts of the inaccurate information, Mr. Brown disputed the inaccurate information with RP.

78. Mr. Brown specifically asked RP to remove the criminal records because Mr. Brown has not been convicted since 1997.

79. Prior to submitting his dispute, Mr. Brown had personally gone to the Kings Supreme Court to obtain copies of his criminal case. Mr. Brown included copies and/or information of his criminal case in the dispute he sent Defendant.

80. On March 29, 2023, RP confirmed that it had reinvestigated Mr. Brown's dispute and removed the entire criminal record from Mr. Brown's tenant screening report.

81. Mr. Brown reasonably believes that due to RP's inaccurate reporting in the first instance, the Property Manager formed a negative opinion about Mr. Brown and either continued to believe RP's reporting to be accurate or simply moved on to other potential renters.

82. RP's inaccurate reports cost Mr. Brown the housing opportunity that best met his and family's needs, including those attendant to affordability, safety, cleanliness, and proximity to work, school, friends, and family.

83. Due to RP's unreasonable procedures in the first place and despite his continued efforts to seek housing, Mr. Brown has had to rent an apartment that does is not as conveniently located, adding otherwise unnecessary travel time to and from work.

84. The injuries suffered by Mr. Brown as a direct result of RP's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, RP's conduct would have given rise to causes of action based on defamation and invasion of privacy.

85. As a result of RP's violations of the FCRA, Mr. Brown has suffered a range of actual damages including, without limitation, loss of housing opportunities; additional and unexpected expenses to secure alternative accommodations; loss of time and money trying to correct the tenant screening reports; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I

### 15 U.S.C. §1681e(b)

**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

86. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

87. Defendant is a "consumer reporting agency" as defined by §1681a(f).

88. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by §1681a(c).

89. At all times pertinent hereto, the above-mentioned tenant screening reports were "consumer reports" as that term is defined by §1681a(d).

90. Defendant violated §1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the tenant screening reports they sold about Plaintiff as well as the information they published within the same.

91. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; additional and unexpected expenses to secure alternative accommodations; loss of time and money trying to correct the tenant screening reports; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

92. Defendant willfully violated §1681e(b) in that their conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to §1681n. Alternatively, they were negligent, entitling Plaintiff to recover under §1681o.

93. Plaintiff is entitled to recover statutory damages, punitive damages, and

reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§1681n, 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: May 10, 2023

**CONSUMER ATTORNEYS**

By: */s/ Santiago J Teran*
Santiago J Teran (NY Bar No. 5528906)
300 Cadman Plaza W, 12th Floor, Ste 12040
Brooklyn, NY 11201
E-mail: steran@consumerattorneys.com
Phone: (305) 433-3252
Facsimile: (718) 715-1750

Daniel Cohen (NY Bar No. 5481460)
300 Cadman Plaza W, 12th Floor, Ste 12040
Brooklyn, NY 11201
E-mail: dcohen@consumerattorneys.com
Phone: (718) 770-7901
Facsimile: (718) 715-1750

Consumer Attorneys
2125 Biscayne Blvd, Ste 206
Miami, FL 33137
*Attorneys for Plaintiff*
*Alton Brown*